IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VINCENT NEIL LEHMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 22-0097-MU ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Vincent Neil Lehman brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 11 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 12. Upon consideration of the administrative record, Lehman's brief, the Commissioner's brief, and the arguments made at oral argument,

the Court determines that the Commissioner's decision denying benefits should be affirmed.[1]

## I.  PROCEDURAL HISTORY

Lehman applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on October 8, 2020, alleging disability beginning on December 16, 2017. (PageID. 233-36). His application was denied at the initial level of administrative review on December 22, 2020. (PageID. 173-76). He filed a Request for Reconsideration on January 19, 2021, that was denied on February 8, 2021. (PageID. 177-82). On February 22, 2021, Lehman requested a hearing by an Administrative Law Judge (ALJ). (PageID. 183-84). After a hearing was held on October 7, 2021, the ALJ issued an unfavorable decision finding that Lehman was not under a disability from the alleged onset date, December 29, 2017, through the date of the decision, October 25, 2021. (PageID. 95-120; 52-69). Lehman appealed the ALJ's decision to the Appeals Council, and, on January 4, 2022, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 46-50).

After exhausting his administrative remedies, Lehman sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on June 1, 2022. (Docs. 9, 10). Both

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Docs. 11,12 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

parties filed briefs setting forth their respective positions. (Docs. 13, 14). The Court conducted oral argument on September 13, 2022. (Doc. 20).

## II.  CLAIM ON APPEAL

Lehman alleges that the ALJ's decision to deny him benefits is in error because the ALJ's Residual Functional Capacity (RFC) determination at the fifth step of the sequential evaluation process was not supported by substantial evidence due to the ALJ's failure to evaluate all provider opinions of record. (PageID. 775).

## III. BACKGROUND FACTS

Lehman, who was born on January 10, 1988, was almost 33 years old at the time he filed his claim for benefits. (PageID. 280). Lehman initially alleged disability due to radiculopathy, bulging discs, and spinal stenosis. (PageID. 301).  Lehman graduated from high school and attended one year of college at Bishop State Community College. (PageID. 302). Prior to stopping work in December of 2017, Lehman was an Intelligence Analyst in the US Army for almost 8 years. (PageID. 302). In his Function Report, which he completed on October 29, 2020, he stated that he takes care of his personal needs, he can drive a car and go out alone, he takes care of his pets, does laundry and takes out the trash, can cook his meals, watches television, can order clothes online, can pay bills, enjoys drawing and video games, hangs out often with others, and goes out to restaurants. (PageID. 307-10). He stated that the numbness and pain in his arms and neck limit the kinds of things he can do and the amount of time he can do them. (PageID. 311). He testified at the hearing that he gets headaches and has a hard time sleeping because of the pain, which makes it hard for him to focus. (PageID. 107). He further testified that the lack of sleep and pain and numbness in his arms would keep

him from doing a light type of job. (PageID. 109-110). He also testified that at least once a week he has a bad day and must lay in bed all day. (PageID. 108).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ determined that Lehman had not been under a disability from the alleged onset date, December 16, 2017, though the date of the decision, October 25, 2021, and thus, was not entitled to benefits. (PageID. 69). At step one of the five-step sequential evaluation, the ALJ found that Lehman had not engaged in SGA since December 16, 2017, the alleged onset date. (PageID. 57). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, Lehman had severe impairments of cervical disc disease; osteoarthritis; and post-traumatic stress disorder (PTSD), but that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 57-61). After considering the entire record, the ALJ concluded that Lehman had the RFC to perform light work, except that he cannot climb ladders, ropes, or scaffolds, can occasionally reach overhead and frequently reach in all other directions with the bilateral upper extremities, can frequently handle, finger or feel with the bilateral upper extremities, cannot perform complex tasks but can perform tasks consistent with SVP levels from one to four (semi-skilled work), and is expected to be off-task approximately 5% of the workday in addition to normal breaks. (PageID. 61-67). After setting forth his RFC, the ALJ determined that Lehman was unable to perform any past relevant work. (PageID. 67-68). However, considering his age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Lehman could perform, and therefore, found that

Lehman was not disabled within the meaning of the Act. (PageID. 68-69).

## V. DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). "For DIB claims, a claimant is eligible for benefits where [he] demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of

proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Lehman argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not explicitly evaluate the persuasiveness of the first of two opinions rendered by Jack C. Carney, Ph.D. (PageID. 776-78). On February 20, 2019, Dr. Carney, a psychologist, completed a Mental Disorders Disability

6

Benefits Questionnaire at the request of the VA. (PageID. 746-52). In response to questions on this form, Dr. Carney opined that Lehman was suffering from Major Depressive Disorder, Single episode, Severe, and Insomnia Disorder, which could have been due to depression or due to chronic pain. (PageID. 747). In the remarks section of the form, Dr. Carney noted that Lehman was so depressed that he had difficulty sustaining energy and motivation to complete work assignments and that his sleep was so disrupted that he was usually fatigued at work, making concentration and focus on work assignments difficult. (PageID. 752). Thereafter, on August 19, 2019, Dr. Carney completed an Adult Psychological Assessment of Lehman. (PageID. 594-603). In this report, Dr. Carney referenced records from the VA which indicated that Lehman had a diagnosis of unspecified sleep wake disorder and persistent depressive disorder. (PageID. 595). After his evaluation of Lehman, Dr. Carney gave him a diagnosis of Post-Traumatic Stress Disorder and noted that depression and anxiety are subsumed under this diagnosis. (PageID. 603). Dr. Carney opined that Lehman did not appear to possess the ability to understand, carry out, and remember instructions in a work setting or the ability to respond appropriately to supervision, co-workers, and work pressures. (*Id.*).

In his decision, the ALJ reiterated the information contained in both the February 20 and the August 19 reports prepared by Dr. Carney. (PageID. 65). The ALJ noted that in August of 2019, Dr. Carney "opined that a favorable response to treatment cannot be expected for [Lehman] within six to 12 months; [he] does not appear to possess the ability to understand, carry out, and remember instructions in a work setting … [or] the ability to respond appropriately to supervision, co-workers, and work pressures in a

7

work setting." (PageID. 66). The ALJ then stated that he found "Dr. Carney's opinion unpersuasive as it is far too restrictive and, as such, is inconsistent with, and unsupported by, his own examination findings and with the overall objective medical evidence of record." (*Id.*). Lehman argues that, because the ALJ did not specifically mention Dr. Carney's February 20 report in his discussion concerning the weight he afforded Dr. Carney's opinion, he did not evaluate this report. (PageID. 777-78). However, the ALJ specifically stated that he considered all evidence received in formulating the RFC. (PageID. 62-67).

Because many claims have voluminous records from multiple sources, the ALJ is not required to articulate how he or she considered each medical opinion from one medical source individually. 20 C.F.R. § 1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see e.g., Poole v. Kijakazi,* 2022 WL 1651196, at *2 (M.D. Ala. May 24, 2022) (in considering whether a medical source's opinion is supported by the source's own records and consistent with the other evidence of record, "an ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source"). "An ALJ 'is under no obligation to "bridge" every piece of evidence he finds inconsistent with a specific opinion. [ ] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review.'" *Poole,* 2022 WL 1651196, at *3 (quoting *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021)); *see also Dyer v. Barnart*, 395 F.3d 1206,

1211 (11th Cir. 2005) (holding that ALJ is not required to discuss every piece of evidence as long as the reviewing court can surmise that the ALJ considered the plaintiff's medical condition as a whole). Here, the ALJ complied with the applicable regulations.

Additionally, based on a complete review of the medical records and the thorough overview of the records contained in the ALJ's Decision, *see* PageID. 57-67, substantial evidence supports his conclusion that Dr. Carney's opinion was far too restrictive and internally inconsistent, as well as inconsistent with the overall objective medical evidence. It is clear to the Court that the ALJ considered Lehman's medical condition as a whole in assessing his RFC. *See Dyer*, 395 F.3d at 1211. Therefore, the Court finds that the ALJ did not err by specifically mentioning only the August 19 opinion of Dr. Carney, which was the most recent opinion, in assessing the persuasiveness of his medical opinions.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the entire transcript and considered the arguments made by Lehman, the Court finds that the ALJ's determination that Lehman was not disabled is supported by substantial evidence and based on proper legal standards.

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **28th** day of **October, 2022**.

s/P. BRADLEY MURRAY<br>
**UNITED STATES MAGISTRATE JUDGE**